THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERTO HECHAVARRIA, Respondent.—

Indicted in April 1973 for an April 1, 1973 homicide, defendant, who was not apprehended until August 14, 1986, was, after a jury trial, acquitted of the murder charges, which were an outgrowth of an early Sunday morning shooting outside of a Bronx bar, but found guilty of possession of a weapon as a felony. Vincente Rivera, the victim, accompanied by his daughter, had been a patron in the bar, as was defendant.

Rivera apparently intervened in a dispute between defendant and another man. In the course of their argument, defendant said to Rivera, "Why don't you * * * go outside with me and shoot each other out, like it was western." When Rivera walked away, defendant repeated the challenge, "you and me go and shoot it out." Eventually, the owner, Mr. Cruz, had to separate the two, who "were grabbing, throwing at each other." Rivera left the bar but told his daughter to remain. Defendant also remained inside the bar. Rivera returned one-half hour later. His daughter was waiting for him outside the bar, the door to which had been shut. When Rivera knocked on the front door to reenter, defendant and the other patrons approached the door. Cruz heard a shot. Ms. Rivera, standing outside the bar, saw her father fall to the ground, bleeding. Defendant ordered Cruz to open the door. When defendant emerged from the bar, he was holding a gun. Another witness, Jose Ramos, who had been attending church services, saw a crowd of people outside the bar. He also saw defendant, holding a gun in his right hand, standing over a man with blood on his face seated on the ground. Responding police officers recovered a loaded .357 magnum from Rivera's waistband. The gun observed in defendant's hand was never recovered. Rivera was removed by ambulance to Lincoln Hospital, where he died.

Defendant moved to set the verdict aside on the ground that the court failed to instruct the jury that it had to determine whether the weapon allegedly possessed by defendant was operable. Defendant also argued that the evidence was, as a matter of law, insufficient to support the weapon possession conviction. The trial court granted the motion, finding the record "devoid of any evidence by which any rational trier [of] fact could find beyond a reasonable doubt that * * * defendant possessed a loaded and operable firearm." The court found it unnecessary to reach defendant's claim with respect to the inadequacy of the charge. In its ruling, however, the court failed to dispose of the indictment which, following its logic, should have been dismissed.

We disagree with the trial court's determination that the People failed to present sufficient evidence to go to the jury on the question of the gun's operability, but sustain the setting aside of the verdict on the ground never reached, i.e., the failure to charge as a question of fact the requirement that the gun be operable, an issue which we find, contrary to the People's argument, was adequately preserved.

It is well settled that proof of operability is an essential

element of the crime of criminal possession of a weapon (see, *People v Burdash,* 102 AD2d 948; *People v Fwilo,* 47 AD2d 727), and the jury must be so instructed. Here, after the charge, defense counsel specifically requested such an instruction, which was refused. After indicating that it had researched the matter, the court stated, erroneously, that proof of operability was not required at the time of the commission of the crime. Indeed, in limiting their argument on this point to the issue of preservation, the People implicitly concede the error. Thus, the verdict was properly vacated.

On the issue of sufficiency, we find sufficient circumstantial evidence in the record, i.e., defendant's repeated urging to the victim to "shoot it out", his emergence from the bar immediately after the shooting, gun in hand, and his actions in standing over the dying victim. Indeed, the jury would have been amply justified in concluding that defendant fired the fatal shot. (Although such conclusion would be at odds with defendant's acquittal on the homicide charges, inconsistency in verdicts "is always within the scope of authority of a trier of the fact." *[People v Rivera,* 77 AD2d 538, 539.]) It strains credibility to believe defendant, in possession of a gun himself, would urge Rivera to "shoot it out" unless the gun was loaded and operable. As is well recognized, an element of a crime may be proved circumstantially. *(People v Borrero,* 26 NY2d 430, 436.) Nor should we lose sight of the fact that defendant left the scene and failed for a significant span of years to establish contact with his wife and child. That he was acquitted of the murder does not nullify the force of this evidence. Concur—Murphy, P. J., Sullivan, Ross, Asch and Smith, JJ.