OPINION OF THE COURT
Mario F. Mattei, J.
A rose by any other name may still be a rose, but the same may not be true of gravity knives.
In People v Dreyden (15 NY3d 100, 104 [2010]), the Court of Appeals held that
“[a]n arresting officer should, at the very least, explain briefly, with reference to his training and experience, how he or she formed the belief that the object observed in defendant’s possession was a gravity knife . . . , as opposed to a pocket knife, craft knife or other type of knife that does not fit the definition of a per se weapon as defined in Penal Law article 265.”
In the case before the court the defendant has been arrested and charged with possessing a gravity knife. The accusatory *792 instrument indicates that the officer tested the knife in question and that “the blade of said knife released from the handle by force of gravity or centrifugal force and locked in place by means of a button, spring, lever or other device in the handle.”
The defendant contends that the accusatory instrument should be dismissed as facially insufficient because it does not include a reference to the officer’s training and experience, because the language used is conclusory and not factual in nature and because the officer does not indicate how he tested the knife.
The question presented is whether an information is facially sufficient where it alleges that a knife recovered from the defendant was tested by a police officer — without mention of his training and experience — and the result of the test indicates that the knife meets the definition and the statutory requirements of a gravity knife.
The court holds that the instrument is facially sufficient because ultimately testing and personal knowledge as to the operability of a gravity knife, and not training and experience, is the key component; any other interpretation or extension of Drey den would result in situations where “more is less” and would be inconsistent with well-established standards of proof.
“The procedural requirements for the factual portion of a local criminal court information are, simply: that it state ‘facts of an evidentiary character supporting or tending to support the charges’ (CPL 100.15 [3]; see, CPL 100.40 [1] [a]); that the ‘allegations of the factual part . . . together with those of any supporting depositions . . . provide reasonable cause to believe that the defendant committed the offense charged’ (CPL 100.40 [1] [b]); and that the ‘[n] on-hearsay allegations [of the information and supporting depositions] establish, if true, every element of the offense charged and the defendant’s commission thereof (CPL 100.40 [1] [c]; see, CPL 100.15 [3])” (People v Casey, 95 NY2d 354, 360 [2000]).
In essence, the People have to meet both a “reasonable cause” and a “prima facie” case requirement for an instrument to be facially sufficient (People v Kalin, 12 NY3d 225, 228-229 [2009]).
Dreyden was not decided in a vacuum and did not overrule a long line of decisions made by the Court of Appeals with regard to gravity knives.
*793 “The doctrine of stare decisis provides that once a court has decided a legal issue, subsequent appeals presenting similar facts should be decided in conformity with the earlier decision. Its purpose is to promote efficiency and provide guidance and consistency in future cases by recognizing that legal questions, once settled, should not be reexamined every time they are presented. The doctrine also rests upon the principle that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes” (People v Bing, 76 NY2d 331, 337-338 [1990]).
“[S]tare decisis does not spring full-grown from a ‘precedent’ but from precedents which reflect principle and doctrine rationally evolved” (People v Hobson, 39 NY2d 479, 488 [1976]). Dreyden must therefore be read in context with these other decisions in a manner which makes them consistent.
The quantum of evidence necessary to meet the burden of proof beyond a reasonable doubt in cases involving gravity knives has been long established.
In order to convict the defendant of possessing a gravity knife, the People are required to prove that the defendant possessed a knife which fit the legal description of a gravity knife under Penal Law § 265.00. They are not required to prove that the defendant knew he possessed a gravity knife. (People v Berrier, 223 AD2d 456 [1st Dept 1996], lv denied 88 NY2d 876 [1996].)
The People were found to have proved the operability of a gravity knife beyond a reasonable doubt where a police officer testified at trial that he had tested the knife after the defendant was arrested, described the manner in which the knife opened and then demonstrated this in court (People v Birth, 49 AD3d 290 [1st Dept 2008], lv denied 10 NY3d 859 [2008]). In People v Jouvert (50 AD3d 504 [1st Dept 2008], lv denied 11 NY3d 790 [2008]) proof beyond a reasonable doubt was established where the officer both described and demonstrated for the jury the manner in which the knife operated, which conformed to the statutory definition of a gravity knife. In People v Neal (79 AD3d 523, 524 [1st Dept 2010], lv denied 16 NY3d 799 [2011]), a guilty verdict was supported by sufficient evidence where “the operability of the knife conformed to the statutory definition of a gravity knife. The officer demonstrated in court that he could open the knife by using centrifugal force, created by flicking his wrist, and the blade automatically locked in place after being *794 released.” Proof beyond a reasonable doubt is established even if the knife does not operate on each try (People v Smith, 309 AD2d 608 [1st Dept 2003], lv denied 1 NY3d 580 [2003]). None of these cases required proof that the officer testifying had any specific knowledge or training in how a gravity knife works. Indeed, a conviction for possessing a gravity knife was upheld where an officer tested a knife after the defendant’s arrest and demonstrated the operability of the knife in court despite testifying that while he had been taught about gravity knives in the police academy he had never received full training with regard to them (People v Carter, 51 AD3d 576 [1st Dept 2008], lv denied 11 NY3d 735 [2008], habeas corpus denied sub nom., Carter v McKoy, 2010 WL 3290989, 2010 US Dist LEXIS 83246 [SD NY 2010]).
The gravamen of these trial cases indicates that proof beyond a reasonable doubt is satisfied without regard to a witness’ training and experience so long as the knife in question is operable and meets the statutory definition of a gravity knife. Thus, since training and experience are not prerequisites to establish proof beyond a reasonable doubt, the highest burden of proof that exists in and under our law, with regard to a gravity knife, it is this court’s opinion that a recitation of training and experience in a complaint is not required to meet the lesser burden of facial sufficiency where proof of actual operability has been included. A contrary conclusion would mean that “more is less.”
While training and experience have recently been given new importance with regard to facial sufficiency, a standard of legally sufficient evidence, testing, and not training and experience, is a more conclusive way of establishing the true nature of a gravity knife. As the Court of Appeals so cogently pointed out in deciding that the experience of an officer with gravity knives can supply a reasonable suspicion, “[t]ypically, one cannot tell if a knife is a gravity knife until the knife is opened” (People v Brannon, 16 NY3d 596, 602 [2011]). Echoing that sentiment, Judge Jones, in the concurrence/dissent of the very same case, discussed the difference between a folding knife and a gravity knife, and reasoned that “the criminality of a gravity knife can only be verified upon inspection.” (Id. at 605 [Jones, J., concurring in part and dissenting in part].)
To contend that a recitation of training and experience is the exclusive way that a complaint can be converted and deemed sufficient to continue a prosecution would fly in the face of recent landmark decisions, such as People v Kalin (supra), which *795 have held that although “training and experience” is sufficient to convert a complaint to an information it is nonetheless a lesser standard than that previously required, which was an actual test or lab report. Kalin, followed by People v Casey (supra), make it clear that the Court of Appeals is expanding, not contracting, the manner in which a complaint may be converted to an information. Indeed, defendant’s argument regarding the necessity of “training and experience” to sustain the facial sufficiency of an information with regard to gravity knives would mean that a charging instrument, sworn to by a civilian, which sufficiently described the operation and manner of a knife so as to meet the statutory definition of a gravity knife, could not, absent some other expert report or supporting deposition, satisfy the legal requirements of facial sufficiency although this very evidence, in the form of sworn testimony, would be enough to satisfy the burden of proof beyond a reasonable doubt. Thus, if Albert Einstein and Thomas Edison, while on a lunchtime stroll around campus, were menaced with a knife, it might be impossible to draw a sustainable information, if training and experience is the sine qua non of sufficiency, but not difficult to prove guilt beyond a reasonable doubt. Einstein would swear that, not having put much stock in Newton’s research, he has never seen nor does he necessarily believe that such a thing as a “gravity” knife exists and while he had never before viewed a knife like the one brandished during the incident, he, being a Nobel prize winning physicist, knows centrifugal force when he sees it and the knife clearly opened by that long established and scientifically accepted principle of motion. And Edison would swear that he, an inventor holding thousands of patents, did not get a good look at the perpetrator’s face because when the knife was held between his eyes he was fascinated with the mechanism that allowed the knife to lock into place. Certainly, if this was sworn testimony, accepted as true by a jury, it would be sufficient to prove, beyond a reasonable doubt, the defendant’s guilt. It is not logical therefore that this same recitation, presented as sworn allegations in a complaint and accepted as true by the mandates of proper judicial review, would not be sufficient to establish reasonable cause. Thus, the logical extension of defendant’s argument would mean that a rose is not a rose unless and until a botanist says so.
Additionally, the conclusion advanced by defendant, that facial sufficiency requires the necessity of pleading “training and ex *796 perience,” would be at odds with the First Department’s holding in Berrier (supra) in that the People would not have to show that the defendant knew that what he possessed was in fact a gravity knife to prove the defendant’s knowing possession of a gravity knife beyond a reasonable doubt, but the People would have to show that their deponent knew, based upon training and experience, that what the defendant possessed was in fact a gravity knife to establish reasonable cause for facial sufficiency. Clearly, this cannot be what the Court of Appeals had in mind in deciding Drey den.
The defendant’s contention that even if the test is accepted the accusatory instrument is not converted because the deponent fails to indicate what kind of test he conducted is also unpersuasive.
In cases where lab reports are required for facial sufficiency, the lab report need not state how the test was conducted. There is no requirement for instance that a ballistics report indicate whether the firearm in question was shot into water, a bale of hay or the air. Chemical tests for drugs are not required to specify whether gas chromatography, color tests or other types of tests were conducted. Rather, the lab report will be accepted so long as it indicates that the item was tested, the results were positive and that the person signing the report had personal knowledge of the test and its result (see Matter of Rodney J., 83 NY2d 503 [1994]). Thus, the same quantum of proof required from a lab report — a sworn statement of personal knowledge regarding the test and its results — is present in the instant accusatory instrument. This showing of operability, rather than “training and experience,” is in accord with the Court of Appeals’ ruling in People v Longshore (86 NY2d 851 [1995]), requiring that the People prove the operability of a weapon to establish proof beyond a reasonable doubt, as well as the logic in cases involving stun guns (People v Khoi Dang, 172 Misc 2d 274 [Crim Ct, Kings County 1997] [facial sufficiency of an information met and a lab report is not required where it is alleged that court officer tested stun gun and it was operable]) and mace (People v Wilkerson, 184 Misc 2d 949 [Crim Ct, NY County 2000] [lab report is not required to convert a complaint to an information and operability of mace is shown where the allegations indicate that the victim suffered swelling on the face and redness and swelling in the eyes]).
Defendant’s additional contention — that the language used is conclusory and not factual, is without merit.
*797 The pleading in this case indicates that after the knife was tested certain results occurred. The results are the same as the statutory definition. While defendant is correct that the allegations track the statutory language, this is not a defect as it is the only way that a complaint can be pleaded to sufficiently distinguish a gravity knife from all other knives which are not per se weapons. Pleading words not in the statute would result in a discourse of what those words mean and questions as to whether or not those words meet the statutory requirements, an unnecessary exercise which would elevate form over substance. While “[t]he law does not require that the information contain the most precise words or phrases most clearly expressing the charge, only that the crime and the factual basis therefor be sufficiently alleged” (People v Sylla, 7 Misc 3d 8, 10 [App Term, 2d Dept 2005]), where precisely defined definitions are involved in the law, synonyms are best left to creative writing classes. Thus, in Matter of Michael Grudge M. (80 AD3d 614 [2d Dept 2011]) the supporting deposition of the arresting officer which contained a description of the gravity knife and its operation, based upon his personal observations and handling of the knife, was found to be nonconclusory and factual.
The allegations here have given the accused “[n]otice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense” and therefore “should be given a fair and not overly restrictive or technical reading” (People v Konieczny, 2 NY3d 569, 575 [2004], quoting People v Casey, 95 NY2d 354, 360 [2000]).
Thus, the information meets the legal sufficiency requirements of CPL 100.15 and 100.40; accordingly, defendant’s motion to dismiss is denied.